NETTIE M. WHALEY, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

RAILROADS — LIABILITY FOR DAMAGES TO DOMESTIC ANIMALS UNDER SECTION 32 OF THE RAILROAD LAW. Section 32 of the Railroad Law (L. 1890, ch. 565) imposes no duty upon a railroad corporation to keep closed, except when used, farm gates placed in fences for the convenience of the owners of adjoining property. If the fences are in good repair, in the absence of affirmative proof of some negligent or willful act causing the injury, it is not liable for damages to domestic animals straying through an open gateway upon the track and which were killed thereon. Mere proof, therefore, of the accident and that the gate was open is insufficient upon which to base a recovery, especially in a case where the adjoining owner was notified that the gate was open and promised to close it.

*Whaley* v. *Erie R. R. Co.,* 88 App. Div. 621, reversed.

(Argued May 1, 1905; decided May 30, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered

November 27, 1903, which affirmed a judgment of the Wyoming County Court affirming a judgment of a Justice's Court in favor of plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George N. Orcutt* for appellant.   The statutory duty of the defendant was to erect and maintain fences on the sides of its road with farm crossings and openings, with gates therein at such farm crossings whenever and wherever reasonably necessary for the use of the owners and occupants of adjoining lands.   When made and in good repair the railroad company is not liable for any damages unless negligently or willfully done.   (L. 1890, ch. 565, § 32; *Murray* v. *N. Y. C. R. R. Co.*, 3 Abb. Ct. App. Dec. 339.)   Defendant was not negligent in failing to close the gate, nor in the fact that the gate was open, and there is no evidence sufficient to permit a finding of negligence and it was error to deny defendant's motion for a nonsuit.   (*Harding* v. *C., M. & S. P. Ry. Co.*, 100 Iowa, 677; *C., B. & Q. R. Co.* v. *Sierer*, 13 Ill. App. 261; *I. C. R. Co.* v. *McKee*, 43 Ill. 119; *Moers* v. *N. P. R. R. Co.*, 82 N. W. Rep. 1085; *P. D. & E. R. Co.* v. *Aten*, 43 Ill. App. 68.)   The primary duty of keeping the gates closed rested upon Quayle, the landowner.   (*D. B. Co.* v. *N. Y. C. & H. R. R. R. Co.*, 53 Hun, 396; *Megrue* v. *Lennox*, 59 Ohio St. 479; *Magilton* v. *N. Y. C. & H. R. R. R. Co.*, 11 App. Div. 376; *Adams* v. *A., T. & S. F. R. Co.*, 46 Kan. 161; *Rouse* v. *Osborn*, 3 Kan. App. 139; *Eames* v. *B. & W. R. Co.*, 14 Allen, 151; *Harrington* v. *C., R. I. & P. R. Co.*, 71 Mo. 304; *Lemon* v. *C. & G. T. R. Co.*, 59 Mich. 618; *C. & A. R. Co.* v. *Barnes*, 116 Ind. 126; *Russell* v. *Hanley*, 20 Iowa, 219.)   No duty rests upon the railroad company to close gates, unless the landowner has so far failed to perform his duty that a fence is not being maintained, and the railroad company has notice of that fact sufficient to shift the duty of closing the gates from the landowner to the railroad company.   In that event only the rail-

road company is chargeable with the duty of using reasonable care to see that the gates are closed as, against a non-adjacent landowner, but not even then as against the landowner who neglects to close them. (*Hungerford* v. *S. B. & N. Y. R. Co.*, 46 Hun, 339; *Adams* v. *A., T. & S. F. R. Co.*, 46. Kan. 161.)

*Michael L. Coleman* for respondent. The primary duty of keeping the gate in question closed, as between the defendant and the plaintiff, rested upon the defendant. (*Spinner* v. *N. Y. C. & H. R. R. R. Co.*, 6 Hun, 600; 67 N. Y. 153; *Connolly* v. *C. V. R. R. Co.*, 4 App. Div. 221; *Dayton* v. *N. Y., L. E. & W. R. R. Co.*, 81 Hun, 284; *Chapman* v. *N. Y. C. & H. R. R. R. Co.*, 33 N. Y. 369; *Payne* v. *T. & B. R. Co.*, 83 N. Y. 572; *Gardner* v. *Friedrich*, 25 App. Div. 521.)

GRAY, J. The plaintiff recovered a judgment, in the court of a Justice of the Peace, for the loss of some cows, which were killed upon the track of the defendant. The judgment was affirmed in the County Court of Wyoming county and the Appellate Division, in the fourth department, having further affirmed the judgment by a divided court, has certified the case to this court.

It appears from the evidence adduced by the plaintiff that her cows broke down the line fence, in the night, which separated her farm from that of her neighbor, a man named Quale, and, straying through his farm, passed by an open gateway upon the defendant's track. Quale's farm lay upon both sides of the railroad and the gate had been constructed for his private crossing. No claim is made by the plaintiff that there was any negligence in the operation of the train which injured her cattle. Her right of recovery is predicated upon a neglect of duty on the defendant's part in suffering Quale's gateway to be open upon the night in question. She showed by several witnesses that they had frequently observed the gate to be standing open; but the facts of the evening,.

preceding the killing of her cattle, were testified to, solely, by Quale and by Doody, the defendant's section foreman, who were called by her to testify. Quale described the gate as having been recently repaired. He says that, when he was awakened in the night and was told of some cattle being on the crossing, he found the gate wide open. On the further side of the track was his vineyard, in which he had been working, daily, for several weeks. He was unable to remember whether he had closed the gate that evening or not; but he said that Doody had cautioned him to keep the gate closed. Doody testified that he had been working at the crossing during the day and when he left, shortly before six o'clock, Quale was standing at the crossing with the gate open. He says that Quale told him he would close the gate after he had fed his pigs, and the witness left without seeing him do so. The defendant gave no evidence; but moved for a nonsuit, upon the ground that the plaintiff had failed to prove that the occurrence was due to any fault, or neglect, of the defendant, or of any of its employés. This motion was denied and the justice gave judgment to the plaintiff for the value of her cows.

The recovery of the plaintiff appears to have been sustained upon the theory that it was the defendant's duty to require its trackmen, in their nightly rounds, to examine if the gates at private crossings were closed and that the mere proof of the accident and of the open gate was sufficient to make the defendant responsible for the damage. Such seems, at any rate, to be the gist of the reasoning in the opinion of the county judge. No opinion was rendered at the Appellate Division; although we think that, having deemed the case to present a question of law of sufficient importance to require review by this court, an expression of the views of that court was due. I am quite unable to agree with the view taken below of the case. I do not think that the Railroad Law, in its provision for fences and farm crossings, operated to relieve the plaintiff from the burden of affirmatively showing that the defendant's employés were guilty of some negligent act,

to which the killing of the cattle might be traced. It was not Doody's duty, or that of any other employé of the defendant, to close the gate, when the farm owner was making use of his private crossing. It being there for his convenience, Doody had the right to accept his assurance that he would close the gate, when he was through with his work. That the evidence showed the gate to have been frequently, even habitually, open was insufficient to establish, presumptively, any neglect of duty on the defendant's part. Unless the statute imposes upon the railroad company a duty so absolute, with respect to the closing of these gates at private crossings, as that the mere proof of the accident and of the open gateway suffices to cast upon it the burden of proving that its servants were not at fault, the plaintiff had not made out a cause of action. The Railroad Law imposes no such burden by its language and I do not think that it can be so construed. Section 32 of the Railroad Law, which is the provision in question, provides that every railroad corporation shall erect and maintain fences on the sides of its road, with farm crossings and openings with gates wherever reasonably necessary for the use of the owners of the adjoining lands. It reads: " So long as such fences  *  *  *  are not in good repair, the corporation  *  *  *  shall be liable for all damages  *  *  *  to any domestic animals. When made and in good repair, they shall not be liable for any such damages, unless negligently or willfully done." The language of the statute is plain enough. It casts the railroad company in damages, only, when the fences are not in good repair, or, if in good repair, when the damage is negligently, or willfully, done. In *Chapman* v. *New York Central Railroad Company*, (33 N. Y. 369), the plaintiff's recovery of damages, for the killing of his horses by a passing train, was upheld upon the ground that the defendant's employé neglected to replace the bars of the fence, which he had taken down for the purpose of passing through with a team. He was employed as a day laborer and he had let down the bars in the evening, while engaged in some separate business of his

own concern.  Inasmuch, however, as it appeared that it was a part of his duty, after his day's labor, to give attention to anything which seemed amiss about the railroad property, his failure to put up the bars was held to be a neglect of duty, for which the defendant became responsible.

In *Spinner* v. *N. Y. C. & H. R. R. R. Co.*, (67 N. Y. 153), nothing was decided by this court contrary to the view, which I entertain, that, to make a railroad company responsible for damages in such a case, the evidence must prove, or tend to prove, a neglectful, or wrongful, act leading to the occurrence.  All that that case decided, in effect, was that, as the gateway there in question had been diverted from its original purpose of serving the convenience of the original proprietor of the adjoining lands to that of a common passageway for the defendant's customers, the duty devolved upon it of seeing, when the use of the gate for the day had ceased, that it was closed.  "It is permitted to put it there for the convenience of the adjoining farmers.  *  *  *  When it is put to its, or their (their customers') use  *  *  *  it is not a farm gate.  *  *  *  If it permits  *  *  *  such a use of the gateway as  *  *  *  results in the gate not serving the end of a fence, it fails in its duty."  (P. 158.)

The intent of the statute was not to change any rule of evidence with respect to the burden upon the plaintiff in a negligence action of showing the neglect of some duty owing to him, as a condition of the right to recover damages against the defendant.  Its intent was to prescribe the performance of a certain duty by a railroad corporation of fencing off its track from the adjoining lands; with the privilege to adjoining owners of lands of having gates and private crossings to subserve their convenience.

It is clear, I think, that Quale could not have recovered against the defendant, if he had sustained any damage to his live stock, by reason of the gate being open; because it would have been due to his own neglect.  If that be true, it is difficult to see how the plaintiff could hold it responsible, when the occurrence was not through its neglectful act; unless the

statute is to receive the extraordinarily strict construction suggested.

For these reasons, the judgment appealed from should be reversed, with costs in all the courts to the defendant.

CULLEN, Ch. J., O'BRIEN, BARTLETT, HAIGHT and WERNER, JJ., concur; VANN, J., not sitting.

Judgment reversed.