## CROSS v. NEW YORK CENT. & H. R. R. CO.

(Montgomery County Court.   February 28, 1910.)

1. RAILROADS (§ 415*)—INJURIES TO STOCK—PRIVATE CROSSINGS—WARNING SIGNALS—NECESSITY.

A railroad company is not bound by statute to give warning of the approach of a train to a private farm crossing, so that it was not liable for injuries to cattle thereon because of failure to do so.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1476–1482; Dec. Dig. § 415.*]

2. RAILROADS (§ 443*)—INJURIES TO STOCK—ACTIONS—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

In an action against a railroad company for injuries to stock at a private farm crossing, evidence held not to show that the accident was caused by defendant's negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1608–1620; Dec. Dig. § 443.*]

3. RAILROADS (§ 443*)—INJURIES TO STOCK—ACTION—SUFFICIENCY OF EVIDENCE—CONTRIBUTORY NEGLIGENCE.

In an action against a railroad company for injuries to stock at a private crossing, evidence held not to show that plaintiff was free from contributory negligence in driving the cattle over the crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1608–1620; Dec. Dig. § 443.*]

4. RAILROADS (§ 441*)—INJURIES TO STOCK—ACTION—PRESUMPTION—CONTRIBUTORY NEGLIGENCE.

There is no presumption of absence of negligence by the owner contributing to the injury of cattle by being struck by a train while being

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

driven across a private farm crossing, and, if the circumstances tend as much to show contributory negligence as its absence, he cannot recover.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1575–1595; Dec. Dig. § 441.*]

5. RAILROADS (§ 441*)—INJURY TO STOCK—ACTION—BURDEN OF PROOF—NEGLIGENCE.

Railroad Law (Laws 1890, c. 565) § 32, requires all railroad companies to erect and maintain fences along the right of way sufficient to keep cattle off the road, with farm crossings and gates wherever reasonably necessary, and to construct cattle guards at all crossings, and makes the corporation liable for damages by cars to animals so long as such fences are not made or kept in good repair. *Held*, that the statute did not relieve one suing for injuries to cattle at a private farm crossing of the burden of showing that the company's employés were guilty of negligence causing the injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1575–1595; Dec. Dig. § 441.*]

6. RAILROADS (§ 413*)—INJURIES TO STOCK—ACTION—SUFFICIENCY OF EVIDENCE—NEGLIGENCE—DEFECTIVE GATES.

That the crossing gate was fastened by a wire, instead of a latch, was not sufficient evidence of negligence in not repairing the gate.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1459–1473; Dec. Dig. § 413.*]

7. RAILROADS (§ 413*)—INJURIES TO STOCK—APPLICATION OF STATUTE.

Railroad Law (Laws 1890, c. 565) § 32, was intended merely to prevent cattle from straying upon the track, and does not apply where the owner opened the crossing gate and drove them upon the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1459–1473; Dec. Dig. § 413.*]

8. RAILROADS (§ 421*)—INJURIES TO STOCK—NEGLIGENCE—DEFECTIVE GATE.

That plaintiff's cattle were struck because of delay in closing the gate at his private farm crossing after he had driven them through the gate in order to cross the track, resulting from the gate being fastened with a wire instead of a latch, would not make the railroad company negligent, as plaintiff should have driven the cattle across the track before closing the gate.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1501–1510; Dec. Dig. § 421.*]

9. RAILROADS (§ 413*)—INJURIES TO STOCK—NEGLIGENCE—ABSENCE OF CATTLE GUARDS.

Railroad Law (Laws 1890, c. 565) § 32, requires railroad companies to construct cattle guards at all road crossings, and makes them liable for damages to animals so long as such fences are not made or in good repair, and provides that, when they are made and in good repair, they shall not be liable for damages unless negligent. *Held*, that it was immaterial to a railroad company's liability for injury to cattle at a private farm crossing that there were no cattle guards, where their absence did not contribute to the accident.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1459–1473; Dec. Dig. § 413.*]

10. RAILROADS (§ 103*)—CONSTRUCTION—CATTLE GUARDS—FARM CROSSINGS.

Railroad Law (Laws 1890, c. 565) § 32, requiring railroad companies to construct cattle guards at all road crossings, only applies to road crossings, and does not require cattle guards at farm crossings.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 318; Dec. Dig. § 103.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Justice Court.

Action by Joseph H. Cross against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, defendant appealed. Reversed.

Lewis, Watkins & Titus, for appellant.

Charles R. Tobin, for respondent.

MOORE, J. This is an appeal from a judgment in favor of plaintiff rendered in justice's court without a jury for $33.60. A cow belonging to the plaintiff was killed October 16, 1907, at 5:20 a. m. at a private farm crossing by a train of cars belonging to and operated by the defendant. The tracks of the defendant ran through the farm which was occupied by the plaintiff under an agreement to work it on shares. The plaintiff was driving his cattle, 16 in number, across the tracks at the time of the accident.

He testifies:

"I started from the house and crossed the flats and opened the gates on the north side of the tracks, and the gate on the opposite side had no catch, and I had to wire it with a flat barbed wire. I went and rounded up the cows and opened the gate, and started to drive the cows across the track to the barn. I opened the gate and drove them on the track, and a train coming from the east going west struck one of the cows, killing it and carrying it about 100 feet. It was a passenger train on track No. 2. * * * It was not dark, but a little foggy."

Plaintiff further testified that there was crushed stone on the crossing, loose and not yet levelled off; that, in order to get the cows over the crossing, "you had to drive them"; that plaintiff looked to see if there were any trains coming. He saw a freight train coming east about three-quarters of a mile away, but did not see or have warning of the passenger train. He heard no whistle. The gate on the south side had no check, and he kept it closed with a wire. After he had driven the cows through he fastened the gate. It took him about half a minute. He had driven the cows across the crossing since the last of July, and thus was familiar with the surroundings. There were no cattle guards at the crossing. Plaintiff's son testified that there was loose stone at crossing and no planks, and that the gate on the southerly side of the tracks was an old one, and had no fastening except a barbed wire with which they fastened it.

This is substantially all of the evidence throwing light on the situation. The plaintiff says he looked, but he does not say when he looked, or where he was when he looked, or specifically that he looked in the direction from which the passenger train was coming, or that he listened, nor does it appear how far away the passenger train could have been seen, or whether the track was straight, or whether or not there was any obstruction, or at what speed the train was running, whether he was driving the cows across the crossing at the very time the cow was struck, or whether he was then fastening the gate. There was no evidence as to how the cows were located on the tracks, nor as to whether or not the plaintiff could have saved the cow if he had not stopped to fasten the gate. He said that he was not alone, but there is no evidence as to who was with him, or what, if any, part his com--

panion took in driving the cattle. The defendant offered no evidence.

The accident happened at a private crossing, and there was no statutory obligation imposed upon the defendant to give any warning of the approach of its train. Burk v. D. & H. Co., 86 Hun, 519, 33 N. Y. Supp. 986; Vandewater v. N. Y. & N. E. R. R. Co., 135 N. Y. 583, 32 N. E. 636, 18 L. R. A. 771. It does not appear that there was any custom of the defendant to give warning upon approaching this crossing, or that there was any failure to manage or run the train with proper care and caution. No intentional wrong or injury is claimed or shown. It does not appear that the accident was caused by the negligence of the defendant, nor has the plaintiff shown that he was free from contributory negligence. He is not entitled to the benefit of any presumption to establish the absence of such negligence on his part, and, where the circumstances point as much to such negligence as to the absence of it, he is not entitled to recover. Fowler v. N. Y. C. & H. R. R. Co., 74 Hun, 141, 26 N. Y. Supp. 218; Wiwirowski v. L. S. & M. S. R. Co., 124 N. Y. 420, 26 N. E. 1023; Whalen v. Citizens' Gaslight Co., 151 N. Y. 70, 45 N. E. 363.

The plaintiff relies greatly on section 32 of the railroad law (Laws 1890, c. 565), which imposes upon every railroad corporation the duty to erect and maintain fences on the side of its road of a height and strength sufficient to prevent cattle, etc., from going upon its road from the adjacent land, with farm crossings and openings with gates therein at such farm crossings whenever and wherever reasonably necessary for the use of the owners and occupants of the adjoining lands, and to construct cattle guards at all road crossings suitable and sufficient to prevent cattle from going on its railroad, and further provides that so long as such fences are not made, or are not in good repair, the corporation shall be liable for all damages done by their agents or engines or cars to any domestic animals upon its road. When made and in good repair, they shall not be liable for any such damages, unless negligently or willfully done. The plaintiff argues that because there was no hook or catch to fasten the gate, and the same had to be fastened with a wire band, the gate was not in good repair, and that defendant was liable under the statute, irrespective of the question as to whether there was negligence in running the trains. The law does not impose upon the defendant any such extreme degree of liability. We may assume that, when the fences and gates were constructed by the defendant, they were properly constructed. It does not appear otherwise. Although the statute imposed upon the defendant the duty of maintaining the fences, the statute must be read with reason. These provisions do not operate to relieve the plaintiff from the burden of affirmatively showing that the defendant's employés were guilty of some negligent act, to which the killing of the cow might be traced. Whaley v. Erie Railroad Company, 181 N. Y. 448, 451–452, 453, 74 N. E. 417, 418. "The intent of the statute was not to change any rule of evidence with respect to the burden upon the plaintiff in a negligence action of showing the neglect of some duty owing to him, as a condition to the right to recover damages against the defendant. Its intent was to prescribe the performance of a certain duty by a railroad.

corporation of fencing off its track from the adjoining lands, with the privilege to the adjoining owners of lands of having gates and private crossings to subserve their convenience." "As it would be impracticable for the railroad company to keep a constant watch of every gate and every rod of fence along the line of its road, it is but reasonable to require of the proprietors, when defects have actually come to their knowledge, to make suitable efforts to apprise the company of such defects. In enforcing this rule, however, upon proprietors, care should be taken not to exempt the company upon which the primary duty rests from its due share of responsibility. It will be found impossible to define with precision the relative obligations of the parties in this respect, and it must result in most cases in a question to be addressed to the sound discretion of a jury." Poler v. N. Y. C. R. Co., 16 N. Y. 476, 481. And see Magilton v. N. Y. Central & H. R. R. R. Co., 11 App. Div. 373, 42 N. Y. Supp. 231. If the gate was out of repair, there is no evidence that the defendant knew it; and the mere fact that the gate was fastened by a wire band, instead of a hook, latch, or some other means, does not furnish sufficient evidence of defendant's negligence in not repairing the gate to justify a judgment for the plaintiff. Murray v. N. Y. C. R. R. Co., *43 N. Y. 274, 278.

Moreover, the cows did not stray upon the tracks by reason of the condition of the gate. The plaintiff himself opened the gate and drove them upon the track. Section 32 of the railroad law is designed merely to prevent horses, cattle, etc., from straying upon the tracks from adjoining lands. Clarke v. N. Y. C. & H. R. R. Co., 104 App. Div. 167, 170, 93 N. Y. Supp. 525. If the accident resulted from the half moment's delay in fastening the gate, the defendant was not in fault. The plaintiff should have driven the cows from the track before fastening the gate. It does not appear whether or not the gate could have been fastened any more speedily had there been a hook or some other appropriate means of fastening the same, or whether any other means of fastening the gate would have been better, safer, or more appropriate than the wire band in use.

The fact that there were no cattle guards at the crossing is immaterial. It does not appear that the lack of them in any way affected the situation. More than that, the statute requires cattle passes at "road crossings," and they are not required at "farm crossings." Brooks v. N. Y. & Erie R. R. Co., 13 Barb. 594; Morrison v. N. Y. & N. H. R. Co., 32 Barb. 572; section 32, Railroad Law. If it was negligent for the defendant to have crushed stone at the crossing not leveled off, it does not appear that it caused or contributed to the accident.

For the reasons stated, the judgment must be reversed, with costs to the appellant.

An order may be prepared accordingly.